Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9742 | **DATE** | 3/14/2003 |
| **CASE TITLE** | CHAVEZ vs. ALBRIGHT | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
       ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order entered this day, defendant's motion for summary judgment is granted. Any pending motions are moot. This action is dismissed in its entirety.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | MAR 17 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | | 28 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 3/14/2003 | |
| | | 03 MAR 17 AM 8:04 | date mailed notice | |
| JS | courtroom deputy's initials | Date/time received in central Clerk's Office | JS mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Raul Chavez, Jr., | ) |
| Plaintiff, | ) ) ) ) |
| v. | ) No. 01 C 9742 |
| Sergeant Albright, | ) ) ) |
| Defendant. | ) ) |

**DOCKETED**

**MAR 1 7 2003**

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On December 20, 2001, plaintiff, Raul Chavez, Jr. ("Chavez"), filed a § 1983 complaint against Sergeant Albright ("Albright") alleging that a ten-day confinement in a medical isolation cell and the failure to return Chavez's personal property violated Chavez's Fourteenth Amendment rights. On January 21, 2003, Albright moved, pursuant to Federal Rule of Civil Procedure 56, for summary judgment. For the following reasons, Albright's motion is granted.

## STATEMENT OF FACTS[1]

Considering the facts and drawing all reasonable inferences in plaintiff's favor, in January 2000, plaintiff Chavez, a wheelchair-bound paraplegic, was a pretrial detainee in Cook County Jail Division 8, also known as the residential treatment unit ("RTU"). He was awaiting trial on a first-degree murder charge, of which he ultimately was convicted. While at Cook County Jail, Chavez

---

[1] The Statement of Facts is derived from Albright's Local Rule 56.1(a) Statement of Facts and Chavez's 56.1(b) Response. For purposes of this summary judgment, where there are disputes of fact, this court will accept as true Chavez's version of the facts.

1



had a lawsuit pending against the City of Chicago, arising out a prior incident with the Chicago Police Department. Further, during Chavez's time in RTU, Albright harassed Chavez, including conducting prolonged property and strip searches of Chavez.

On January 6, 2000, Albright transferred Chavez, by wheeling him, to the medical isolation division of RTU.[2] A Cook County Jail transfer order, dated January 7, 2000, was entered on a prescription form, which bears Chavez's name and inmate number, and states: "MRSA isolation please."[3] Infection Control Nurse Bryan Ranchero ("Ranchero") wrote and signed the order, which also contains another signature, purported by Albright to be Dr. Mohamed Mansour's ("Dr. Mansour"). However, as discussed below, Dr. Mansour made it clear at his deposition that he did not sign the transfer order.

The isolation cell in which Chavez was held segregated from other inmates for ten days made it difficult for Chavez to use the toilet and impossible for him to shower. During Chavez's ten days of isolation, nurses and doctors treated him. The isolation cell, however, did not have bars to assist a wheelchair-bound inmate in using the toilet, and the entrance to the shower had a twelve-inch step up, thereby preventing an inmate in a wheelchair from accessing the shower. In fact, Chavez fell

---

[2] Albright claims he transferred Chavez to the isolation unit on January 7, 2000. Chavez testified at his deposition that he was transferred on either January 6 or 7, 2000 (Pl.'s Dep. at 9–10) but states in his affidavit that his transfer occurred on January 6, 2000 (Pl.'s Aff. ¶ 3). This court accepts the date of January 6, 2000, as stated by Chavez in his affidavit, because this facts is the most favorable to Chavez.

[3] MRSA is a methicillin-resistant staphylococcus aureus infection, which is resistant to penicillin. MRSA must be treated aggressively and sometimes with IV antibiotics. Inmates with MRSA are sometimes, on a case-by-case basis, depending on numerous factors, isolated to prevent them from infecting other inmates.

numerous times, causing bruises to his knees and head, and had feces and urine splatter on his lower body, bedding, and wheelchair.

Prior to transferring Chavez to the isolation unit, Albright ordered him to gather his personal belongings and bring them to the isolation cell. Upon reaching the isolation unit, Albright refused to allow Chavez to bring his property inside the cell with him. Albright placed Chavez's belongings in a plastic bag and left them on the floor outside the door of the isolation cell. Albright never saw Chavez's property again. Albright, however, told Chavez that a doctor threw away Chavez's property because it could have been contaminated. After being released from isolation, Chavez's property was not returned to him. In fact, some of Chavez's belongings were found later in various other inmates' cells in Cook County Jail.

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). In ruling on a motion for summary judgment, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.

A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).

3

There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249.

Generally, the nonmoving party must identify with reasonable particularity the evidence upon which that party relies, and it is not the function of this court to scour the record in search of evidence to defeat a motion for summary judgment. Bombard v. Fort Wayne Newspapers, Inc., 92 F.3d 560, 562 (7th Cir. 1996). However, because Chavez is proceeding pro se, this court will consider his affidavit and the other evidence in the record to which he does not specifically cite in his Local Rule 56.1(b) Response. See Hawkins v. Poole, 779 F.2d 1267, 1269 (7th Cir. 1985).

Although some nonmaterial factual disputes exist, even accepting as true all of Chavez's facts supported by admissible evidence, i.e., viewing the evidence in the light most favorable to the nonmovant, defendant Albright is still entitled to judgment as a matter of law.

## ANALYSIS

Chavez alleges that Albright punished Chavez by placing him in isolation and failing to return his property, in violation of the Fourteenth Amendment. The due process clause of the Fourteenth Amendment prohibits the state from punishing a pretrial detainee. Zarnes v. Rhodes, 64 F.3d 285, 289 (7th Cir. 1995). To succeed on this claim, Chavez has the burden of showing: "(1) [that] the harm to the plaintiff was objectively serious; and (2) that the official was deliberately indifferent to [plaintiff's] health or safety." Cavalieri v. Shepard, No. 01-3745, 2003 WL 464868, at *3 (7th Cir. Feb. 24, 2003). To establish "deliberate indifference," Chavez must prove that Albright "acted or failed to act despite his knowledge of a substantial risk of serious harm." Id. at *4; see also Butera v. Cottey, 285 F.3d 601, 605 (7th Cir. 2002) ("A finding of deliberate indifference requires a showing that the [defendant] was aware of a substantial risk of serious injury

4

to [plaintiff] but nevertheless failed to take appropriate steps to protect him [or her] from a known danger.").

I.  Ten-Day Isolation

   A.  Retaliation

Plaintiff Chavez admits that he did not view his segregation as punishment. (Pl.'s Dep. at 35,[4] 37.) As the state has a legitimate goal of protecting pretrial detainees' safety, and segregating detainees for medical reasons is rationally related to such goal, Albright argues that Chavez's admission is dispositive of plaintiff's due process claim. See Zarnes, 64 F.3d at 291 (holding that segregation of detainee for her protection and the protection of other inmates is not punishment). Chavez asserts that the isolation order was pretext for retaliation by Albright for Chavez's previously filed lawsuit against the City of Chicago.

Chavez, however, has not introduced admissible evidence showing that Albright knew, at the time of Chavez's isolation, about Chavez's then pending lawsuit against the City of Chicago. In fact, Albright states in his affidavit that he had no such knowledge. (Albright Aff. ¶ 11.) Therefore, Albright could not have retaliated against Chavez for filing a lawsuit about which Albright was not aware. Cf. Maarouf v. Walker Mfg. Co., 210 F.3d 750, 755 (7th Cir. 2000) (holding that in the Title VII context "[t]he critical issue . . . is whether the person who made the decision to terminate [a plaintiff's] employment was aware of the discrimination allegations at the time [of the alleged retaliatory termination], because absent such knowledge [a plaintiff] lacks a causal link between the termination and the complaint of discrimination.").

---

[4] Chavez said, "[I]t's not like I looked at it as being segregated, which is disciplinary segregation. So I seen that, you know, it was medically."

5

Chavez has provided no evidence to contradict Albright's affidavit, in which Albright denied knowledge of the lawsuit, and the statement from inmate Michael Nieto ("Nieto") to which Chavez testified at his deposition indicating Albright had knowledge of the lawsuit is inadmissible hearsay. (Pl.'s Dep. at 17.[5]) See FED. R. EVID. 801(c); 802; Woods v. City of Chicago, 234 F.3d 979, 988 (7th Cir. 2000) (holding that to be considered at summary judgment, evidence must be admissible at trial under the Federal Rules of Evidence). Such evidence is being offered to prove the truth of the matter asserted, i.e., that Albright "was well aware about [i.e., had knowledge of] [Chavez's] lawsuit with the Chicago Police . . . ." (Pl.'s Dep. at 17.) Thus, because Chavez has not introduced admissible evidence showing that Albright, at the time of Chavez's isolation, was aware of Chavez's then pending lawsuit against the City of Chicago, in spite of the opportunity to engage in discovery,[6] it becomes uncontested that Albright lacked such knowledge. Consequently, Chavez's retaliation claim fails.

B.  Deliberate Indifference

As set forth in the Statement of Facts, Albright had harassed Chavez in the past (Pl.'s Dep. at 18; Pl.'s Aff. ¶ 5), Dr. Mansour never signed the transfer order (Mansour Dep. at 18, 19, 20, 23[7]),

---

[5] Chavez testified at his deposition that Nieto told him that Albright had told Nieto that "[Albright] was well aware about my lawsuit with the Chicago Police . . . ." Obviously, Albright's statement to Nieto is a non-hearsay party-opponent admission under FED. R. EVID. 801(d)(2)(A); however, the statement from Nieto to Chavez is hearsay. Nieto was not deposed and provided no affidavit supporting Chavez's deposition.

[6] Chavez had the full opportunity to conduct discovery, including the ability to take up to ten depositions on his behalf. (See Report of Parties Planning Meeting, Dated May 6, 2002, Docket Entry 11.)

[7] Dr. Mansour stated, "There was an order written by – I cannot make the name of the physician, but it seems was cosigned by our infection control nurse, Bryan Rachero [sic]."

6

and Ranchero backdated or falsified the order[8] (Ranchero Dep. at 8, 10, Ex. 2). With regard to the harassment, Chavez has not shown that the harassment was in any way part of a grand scheme to isolate him and take his property for payment to Nieto. Chavez asserts this in his Motion Opposing Defendant's Motion for Summary Judgment (at Pages 1, 2) and Response to Defendant's Memorandum of Law (at 1, 6, 8, 9), but because Chavez has offered no evidence to support it, not even in his affidavit, such argument is pure conjecture and has no evidentiary weight.

As to the transfer itself, Chavez has introduced no evidence showing that Albright was deliberately indifferent to Chavez's health or safety. Although Ranchero's conduct is suspicious at best, there is no evidence that he wrote the transfer order at Albright's behest. In fact, the record is devoid of any evidence that Ranchero and Albright even knew each other. However, viewing the facts in the light most favorable to Chavez, as this court must, Albright transferred Chavez on January 6, 2000. The earliest date on which Albright claims he received a transfer order was January 7, 2000. Thus, for purposes of summary judgment, Albright transferred Chavez on January 6, 2000, without a transfer order. This alone, though, is not sufficient to establish deliberate indifference to plaintiff Chavez's health or safety.

Generally, ten days of isolation is not an objectively serious deprivation of an individual's liberty. See Leslie v. Doyle, 125 F.3d 1132, 1135 (7th Cir. 1997). However, it is not the length of confinement only about which Chavez complains. Chavez asserts that considering his physical circumstances, Albright exposed Chavez to serious danger by placing him in a cell in which he had

---

[8] The transfer order, written by Ranchero, is dated January 7, 2000. However, the laboratory report on which he claimed he relied in issuing the isolation order (Ranchero Dep. at 10) is dated January 8, 2000, and was "reported" this same day. (Ranchero Dep. Ex. 2.) Therefore, Ranchero either backdated the transfer order, fabricated the medical evidence, relied on some other document, or was in some other way mistaken or confused.

7

trouble using the toilet and could not shower. (Pl.'s Dep. at 25, 28; Pl.'s Aff. at ¶ 11.) Again, though, Chavez has presented no evidence tending to show that Albright was deliberately indifferent to a *specific* risk to Chavez's health or safety. See Butera, 285 F.3d at 606.

The question becomes: was Albright aware that transporting Chavez to this isolation cell would cause a specific, substantial risk to Chavez's health or safety? See Cavalieri, 2003 WL 464868 at *3. Here, there is no evidence that Albright was aware of the physical layout of the isolation cell, specifically that it was not accessible, or could not be made to be accessible, to persons in wheelchairs  Morever, nothing suggests that Albright was aware of the extent of Chavez's disability, specifically that Chavez could not use a toilet without safety bars or maneuver himself over a twelve-inch step up. Most importantly, Chavez has introduced no evidence indicating that Albright was required to provide for Chavez's care beyond simply transporting him to the isolation unit. In fact, medical personnel, not Albright, had the obligation to attend to, and did attend to, Chavez while he was in isolation. (Pl.'s Dep. at 14–16.) Because the record is devoid of any evidence indicating that Albright was aware of a substantial risk to Chavez by transporting plaintiff to the isolation unit, defendant Albright is entitled to judgment as a matter of law.

II.    Deprivation of Plaintiff's Personal Property

Chavez claims that Albright allowed Chavez's personal property to be taken as a form of punishment. Albright states in his affidavit that he left Chavez's personal belongings outside the isolation cell and never saw them again. (Albright Aff. ¶ 9.) Chavez argues that Albright failed to secure Chavez's property by leaving them in the hallway and that the property was found later in other inmates' cells. (Pl.'s Dep at 21; Aff. ¶ 13.) Again, however, even viewing the evidence in the light most favorable to Chavez, there is no evidence of Albright's deliberate indifference.

8

Negligence is not enough. Because no evidence was presented, this court is unaware if leaving inmates' property outside an isolation cell is an improper procedure.[9] It seems reasonable that jail personnel would want to "decontaminate" property before it is returned to an inmate with a contagious disease and released back into the general population. Chavez claims Albright told him Chavez's property was thrown out (Pl.'s Dep. at 36); however, Albright also said he did so because the property could be contagious and was based on a doctor's order (Id.). Nothing in the record suggests that this, if true, was improper.

Additionally, there is no admissible evidence that Albright conspired with Nieto to steal Chavez's property. Chavez claims they "shared a special mutual relationship observed by many . . ." (Pl.'s Aff. ¶ 7) but fails to submit an affidavit or other evidence from these "witnesses." It is unfortunate that all of Chavez's property was not returned to him; however, the evidence, at most, suggests that Albright was negligent. This is not sufficient; nothing leads this court to find that Albright deprived Albright of his property with deliberate indifference. Accordingly, Albright is entitled to summary judgment.

Finally, if plaintiff Chavez is alleging violations of procedural due process, he has introduced no evidence that the deprivation of property took place according to established state procedure, nor that he lacked an adequate remedy under state law, both of which are prerequisites to recovery. See Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cri. 1996).

---

[9] Chavez's unsupported statements on page 3 of his Response to Defendant's Memorandum of Law and on page xi of his 56.1(b) Response are not admissible evidence of proper procedure.

9

## CONCLUSION

For the above stated reasons, defendant Albright's motion for summary judgment is granted.

This case is dismissed in its entirety. Any pending motions are moot.

ENTER:

*James F. Holderman*
JAMES F. HOLDERMAN
United States District Judge

DATE: March 14, 2003